**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

ROSA MARIA S.,                    )
                                  )
            Plaintiff,            )
                                  )
    v.                            )        1:24CV1035
                                  )
FRANK J. BISIGNANO,               )
Commissioner of Social            )
Security,                         )
                                  )
            Defendant.[1]         )

**MEMORANDUM OPINION AND ORDER**
**OF UNITED STATES MAGISTRATE JUDGE**

Plaintiff, Rosa Maria S., brought this action pursuant to the Social Security Act (the "Act") to obtain judicial review of the final decision of Defendant, the Commissioner of Social Security (the "Commissioner"), denying Plaintiff's claims for Disability Insurance Benefits ("DIB"), Supplemental Security Income ("SSI"), and Disabled Widow's Benefits ("DWB"). (Docket Entry 1.) The Commissioner has filed the certified administrative record (Docket Entry 5 (cited herein as "Tr. __")), and both parties have submitted dispositive briefs in accordance with Rule 5 of the Supplemental Rules for Social Security Actions under 42 U.S.C.

_____

[1] The United States Senate confirmed Frank J. Bisignano as the Commissioner of the Social Security Administration on May 6, 2025, and he took the oath of office on May 7, 2025. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Frank J. Bisignano should substitute for Carolyn W. Colvin as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

§ 405(g) (Docket Entry 11 (Plaintiff's Brief); Docket Entry 12 (Commissioner's Brief)).  For the reasons that follow, the Court will enter judgment for the Commissioner.[2]

## I.  PROCEDURAL HISTORY

Plaintiff applied for DIB, SSI, and DWB (Tr. 262-84), alleging a disability onset date of February 2, 2022 (see Tr. 263, 272, 278).[3]  Upon denial of those applications initially (Tr. 79-108, 135-46) and on reconsideration (Tr. 109-34, 152-66), Plaintiff requested a hearing de novo before an Administrative Law Judge ("ALJ") (Tr. 167-68).  Plaintiff, her attorney, and a vocational expert ("VE") attended the hearing.  (Tr. 48-73.)  The ALJ subsequently ruled that Plaintiff did not qualify as disabled under

---

[2] On consent of the parties, this "case [wa]s referred to [the undersigned] United States Magistrate Judge [] to conduct all proceedings . . ., to order the entry of judgment, and to conduct all post-judgment proceedings []herein." (Docket Entry 9 at 1.)

[3] "For [DWB], in addition to showing disability, a claimant must show that she is a widow who has attained the age of fifty and is unmarried (unless one of the exceptions in 20 C.F.R. § 404.335(e) [] appl[ies]) and that her disability began before the end of the prescribed period." Fraley v. Astrue, No. 2:10-cv-00762, 2011 WL 2681647, at *2 (S.D.W. Va. July 11, 2011) (unpublished) (citing 42 U.S.C. § 402(e) and 20 C.F.R. § 404.335).  "The prescribed period [for DWB] ends with the month before the month in which the claimant attains age 60, or, if earlier, either 7 years after the worker's death or 7 years after the widow was last entitled to survivor's benefits, whichever is later." Fraley, 2011 WL 2681647, at *2 (citing 42 U.S.C. § 402(e)(4) and 20 C.F.R. § 404.335(c)(1)).  In this case, Plaintiff's prescribed period began on July 10, 2016, the date her husband died (see Tr. 271) and, thus, Plaintiff had to establish that her disability began on or before July 31, 2023, the last day of the month seven years after her husband died, in order to obtain DWB. "The definition of disability for [DWB] is the same as for the standard disability case and the five-step sequential evaluation process is applicable to [DWB] cases." Lavender v. Colvin, No. 1:10CV903, 2014 WL 237980, at *2 n.4 (M.D.N.C. Jan. 22, 2014) (unpublished) (Webster, M.J.) (citing 20 C.F.R. §§ 404.1505(a), 404.1520(a)(2)), recommendation adopted, slip op. (M.D.N.C. Feb. 18, 2014) (Eagles, J.).

the Act.  (Tr. 25-47.)  The Appeals Council thereafter denied Plaintiff's request for review (Tr. 1-5, 260-61), thereby making the ALJ's ruling the Commissioner's final decision for purposes of judicial review.

In rendering that decision, the ALJ made the following findings later adopted by the Commissioner:

1.    [Plaintiff] meets the insured status requirements of the . . . Act through March 31, 2027.

2.    It was previously found that [Plaintiff] is the unmarried widow of the deceased insured worker and has attained the age of 50.  [Plaintiff] met the non-disability requirements for [DWB] . . . .

3.    The prescribed period [for DWB] ended on July 31, 2023.

4.    [Plaintiff] has not engaged in substantial gainful activity since February 2, 2022, the alleged onset date.

5.    [Plaintiff] has the following severe impairments: Chiari I malformation, degenerative disc disease of the lumbar spine, radiculopathy to left leg, history of cervical congenital fusion with no spinal or foraminal stenosis, and obesity.

. . .

6.    [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

. . .

7.    . . . [Plaintiff] has the residual functional capacity to perform light work . . . except she: can occasionally push/pull with the bilateral lower extremities; should never climb ladders, ropes, or scaffolds; can occasionally stoop; should avoid concentrated exposure (defined as could tolerate frequent

3

but not constant exposure) to workplace hazards such as unprotected heights and dangerous moving machinery; and should avoid concentrated exposure to extreme noise.

. . .

8.   [Plaintiff] is capable of performing past relevant work as a SALES ATTENDANT.  This work does not require the performance of work precluded by [Plaintiff]'s residual functional capacity.

. . .

In addition to past relevant work, there are other jobs that exist in significant numbers in the national economy that [Plaintiff] can also perform, considering [her] age, education, work experience, transferable skills, and residual functional capacity.

. . .

9.   [Plaintiff] has not been under a disability, as defined in the . . . Act, from February 2, 2022, through the date of th[e ALJ's] decision.

(Tr. 34-42 (bold font and internal parenthetical citations omitted).)

## II.  DISCUSSION

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits."  Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006).  However, "the scope of . . . review of [such a] decision . . . is extremely limited."  Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981).  Plaintiff has not established entitlement to relief under the extremely limited review standard.

4

## A.  Standard of Review

"[C]ourts are not to try [a Social Security] case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).  Instead, "a reviewing court must uphold the factual findings of the ALJ [underlying the denial of benefits] if they are supported by substantial evidence and were reached through application of the correct legal standard."  Hines, 453 F.3d at 561 (internal brackets and quotation marks omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)).  "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance."  Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal brackets and quotation marks omitted).  "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence."  Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the [C]ourt should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ, as adopted by the Commissioner]."  Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted).  "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is

5

disabled, the responsibility for that decision falls on the [Commissioner] (or the ALJ)." Id. at 179 (internal quotation marks omitted). "The issue before [the Court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

When confronting that issue, the Court must take note that "[a] claimant for disability benefits bears the burden of proving a disability," Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981), and that, in this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months,'" id. (quoting 42 U.S.C. § 423(d)(1)(A)).[4] "To regularize the adjudicative process, the Social Security Administration [('SSA')] has . . . promulgated . . . detailed regulations incorporating longstanding medical-vocational evaluation policies that take into account a claimant's age, education, and work experience in

---

[4] The Act "comprises two disability benefits programs. [DIB] . . . provides benefits to disabled persons who have contributed to the program while employed. [SSI] . . . provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

6

addition to [the claimant's] medical condition."  Id.  "These regulations establish a 'sequential evaluation process' to determine whether a claimant is disabled." Id. (internal citations omitted).

This sequential evaluation process ("SEP") has up to five steps:  "The claimant (1) must not be engaged in 'substantial gainful activity,' i.e., currently working; and (2) must have a 'severe' impairment that (3) meets or exceeds the 'listings' of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity [('RFC')] to (4) perform [the claimant's] past work or (5) any other work."  Albright v. Commissioner of Soc. Sec. Admin., 174 F.3d 473, 475 n.2 (4th Cir. 1999).[5]  A finding adverse to the claimant at any of several points in the SEP forecloses an award and ends the inquiry.  For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied.  The second step determines if the claimant is 'severely' disabled.  If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

---

[5] "Through the fourth step, the burden of production and proof is on the claimant.  If the claimant reaches step five, the burden shifts to the [government] . . . ." Hunter, 993 F.2d at 35 (internal citations omitted).

7

On the other hand, if a claimant carries his or her burden at each of the first three steps, "the claimant is disabled." Mastro, 270 F.3d at 177.  Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's [RFC]." Id. at 179.[6]  Step four then requires the ALJ to assess whether, based on that RFC, the claimant can "perform past relevant  work"; if so, the claimant does not qualify as disabled. Id. at 179-80.  However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, whereupon the ALJ must decide "whether the claimant is able to perform other work considering both [the RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65.  If, at this step, the government cannot carry its "evidentiary burden of proving that [the claimant]

---

[6] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations."  Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)).  The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265.  "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain)." Hines, 453 F.3d at 562-63.

8

remains able to work other jobs available in the community," the claimant qualifies as disabled.  <u>Hines</u>, 453 F.3d at 567.[7]

## B.  Assignment of Error

Plaintiff's first and only assignment of error maintains that "[t]he ALJ erred by failing to perform a proper function-by-function evaluation of [Plaintiff]'s ability to sit when formulating the RFC."  (Docket Entry 11 at 5 (bold font and block formatting omitted).)  In particular, Plaintiff notes that "the ALJ found that [Plaintiff] would be expected to sit for a full 6 hours out of an 8-hour workday" (<u>id.</u> at 6 (citing Tr. 37)), and Plaintiff highlights her own statements (<u>see</u> <u>id.</u> at 5 (citing Tr. 59, 61, 65, 339, 344, 375)), as well as medical evidence (<u>see</u> <u>id.</u> at 5-6 (citing Tr. 427, 435, 438, 440, 444, 447-48, 451-52, 468-69, 526, 531, 540, 548, 570, 594, 606, 632, 740)), that she believes support greater limitations on her ability to sit.  In Plaintiff's view, although "[t]he ALJ briefly summarized [Plaintiff]'s testimony" (<u>id.</u> at 7 (citing Tr. 37)) and "some of the medical evidence in the record" (<u>id.</u> (citing Tr. 38-39)), "the ALJ d[id] not explain how the evidence she cite[d] demonstrate[d] that [Plaintiff] c[ould]

---

[7] A claimant thus can qualify as disabled via two paths through the SEP. The first path requires resolution of the questions at steps one, two, and three in the claimant's favor, whereas, on the second path, the claimant must prevail at steps one, two, four, and five.  Some short-hand judicial characterizations of the SEP appear to gloss over the fact that an adverse finding against a claimant on step three does not terminate the analysis.  <u>See, e.g.</u>, <u>Hunter</u>, 993 F.2d at 35 ("If the ALJ finds that a claimant has not satisfied any step of the process, review does not proceed to the next step.").

perform [six hours] of sitting total in the workday or for how long [Plaintiff] c[ould] maintain a seated position" (id. at 6) in violation of Woods v. Berryhill, 888 F.3d 686, 694 (4th Cir. 2018), Monroe v. Colvin, 826 F.3d 176, 189-90 (4th Cir. 2016), and Mascio v. Colvin, 780 F.3d 639-40 (4th Cir. 2015) (see id.). Plaintiff further deems the ALJ's failure to "make any findings regarding how long [Plaintiff] is capable of sitting **at one time** . . . significant because, even with a light RFC, [she] would be expected to sit for *at least* two hours of the workday and her ability to maintain a seated position could impact her occupational base." (Id. at 8 (emphasis in original) (citing Holland v. Commissioner of Soc. Sec. Admin., Civ. No. 17-1874, 2018 WL 1970745, at *10 (D. Md. Apr. 25, 2018) (unpublished), for proposition that "ALJ needs to explain how the determination in frequency of change of position was arrived upon").)

Plaintiff additionally contends that, "'[h]aving met [her] threshold obligation of showing by objective medical evidence a condition reasonably likely to cause the pain claimed, [she wa]s entitled to rely exclusively on subjective evidence to prove the second part of the test, i.e., that [her] pain [wa]s so continuous and/or so severe as to prevent [her] from working a full eight hour day.'" (Id. at 8-9 (quoting Hines, 453 F.3d at 565).) Plaintiff further emphasizes that "[t]he [United States Court of Appeals for the] Fourth Circuit recently addressed a similar issue . . . [and]

10

determin[ed] that the ALJ should have specifically addressed the claimant's testimony regarding how long [s]he was capable of sitting and, further, that ALJs have to perform a function-by-function analysis of contested and relevant functions." (Id. at 8 (citing Dowling v. Commissioner of Soc. Sec., 986 F.3d 377, 388-89 (4th Cir. 2021)).) Plaintiff ultimately contends that "this case must be remanded for an evaluation and discussion of [Plaintiff]'s ability to sit." (Id. at 9.) Those contentions lack merit.

RFC measures "the most a claimant can do despite" any physical and mental limitations, Hines, 453 F.3d at 562; 20 C.F.R. §§ 404.1545(a), 416.945(a), and represents a claimant's "'ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis,'" i.e., "'8 hours a day, for 5 days a week, or an equivalent work schedule,'" Hines, 453 F.3d at 562 (emphasis omitted) (quoting Social Security Ruling 96-8p, Policy Interpretation Ruling Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims, 1996 WL 374184, at *1 (July 2, 1996) ("SSR 98-6p")). An ALJ must determine a claimant's exertional and non-exertional capacity only after considering all of a claimant's impairments, as well as any related symptoms, including pain. See id. at 562-63; 20 C.F.R. §§ 404.1545(b), 416.945(b). The ALJ then must match the claimant's exertional abilities to an appropriate level of work (i.e., sedentary, light, medium, heavy, or very heavy), see 20 C.F.R.

11

§§ 404.1567, 416.967, and any non-exertional limitations may further restrict the claimant's ability to perform jobs within an exertional level, see 20 C.F.R. §§ 404.1569a(c), 416.969a(c).

An ALJ need not discuss every piece of evidence in making an RFC determination. See Reid v. Commissioner of Soc. Sec., 769 F.3d 861, 865 (4th Cir. 2014). However, "the ALJ must both identify evidence that supports his [or her] conclusion and build an accurate and logical bridge from that evidence to [that] conclusion." Woods, 888 F.3d at 694 (internal emphasis, quotation marks, and brackets omitted). As to the role of the function-by-function analysis in that determination, the relevant administrative ruling states: "The RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis[ and,] . . . [o]nly after that[,] may RFC be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy." SSR 96-8p, 1996 WL 374184, at *1.

The Fourth Circuit has addressed this administrative ruling and the issue of whether an ALJ's failure to articulate a function-by-function analysis necessitates remand. See Mascio, 780 F.3d at 636–37. Specifically, the court stated "that a per se rule is inappropriate given that remand would prove futile in cases where the ALJ does not discuss functions that are irrelevant or

12

uncontested," id. at 636 (internal quotation marks omitted), but that "'remand may be appropriate where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review,'" id. (internal brackets and ellipsis omitted) (quoting Cichocki v. Astrue, 729 F.3d 172, 177 (2d Cir. 2013)). Here, the ALJ did not expressly assess Plaintiff's ability to sit on a function-by-function basis (see Tr. 37-40); however, no basis for remand exists, because the ALJ's decision nevertheless supplies the necessary "accurate and logical bridge," Woods, 888 F.3d at 694 (internal quotation marks omitted), between the evidence and her findings that Plaintiff's lumbar degenerative disc disease and left leg radiculopathy (A) qualified as severe impairments at step two of the SEP (see Tr. 34), but (B) did not cause limitations greater than the RFC's allowance of up to six hours of sitting (in no more than two hour intervals generally) in an eight-hour workday (see Tr. 37).[8]

---

[8] Although the RFC does not contain an express finding regarding Plaintiff's ability to sit (see Tr. 37), the ALJ found Plaintiff remained capable of performing "light work as defined in 20 CFR 404.1567(b) and 416.967(b)" (id.). Those regulations define light work as follows:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [a claimant] must have the ability to do substantially all of these activities.

As an initial matter, to the extent Plaintiff intends her contention that she could "rely exclusively on subjective evidence to prove . . . that [her] pain [wa]s so continuous and/or so severe as to prevent [her] from working a full eight hour day'" (Docket Entry 11 at 8-9 (quoting Hines, 453 F.3d at 565)) to mean that the ALJ erred by considering objective medical evidence in analyzing the intensity, persistence, and limiting effects of Plaintiff's symptoms, such an argument misses the mark. Although the Fourth Circuit has "reiterate[d ] long-standing [Circuit] law . . . that disability claimants are entitled to rely exclusively on subjective evidence to prove the severity, persistence, and limiting effects of their symptoms," Arakas v. Commissioner of Soc. Sec. Admin., 983 F.3d 83, 98 (4th Cir. 2020), long-standing cases containing the substance of that holding, such as Craig and Hines (among others), clarify that, "[a]lthough a claimant's allegations about her pain may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its severity, they need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably

20 C.F.R. §§ 404.1567(b), 416.967(b) (emphasis added). Thus, as the ALJ here did not include a specific sitting limitation (see Tr. 37), she implicitly found Plaintiff capable of light work's default requirement of up to six hours total of sitting in an eight-hour workday (in no more than two-hour increments generally with standard breaks (see Tr. 70 (reflecting VE's testimony that "most employers do allow the two 15-minute breaks and then a 30-minute lunch . . . th[at] are usually every two hours"))).

14

be expected to cause the pain the claimant alleges she suffers," Craig, 76 F.3d at 595 (emphasis added); see also Hines, 453 F.3d at 565 n.3 (quoting Craig, 76 F.3d at 595).

In other words, under the appropriate circumstances, an ALJ may choose to rely exclusively on a claimant's subjective symptom reports to find disabling symptoms; however, Arakas, Craig, and Hines do not compel ALJs to consider only subjective evidence, as such a requirement would conflict with both the Act and its implementing regulations, which plainly require ALJs to consider a variety of factors, including objective medical evidence, in evaluating the intensity, persistence, and limiting effects of symptoms. See 42 U.S.C. § 423(d)(5)(A) ("Objective medical evidence of pain . . . established by medically acceptable clinical or laboratory techniques (for example, deteriorating nerve or muscle tissue) must be considered in reaching a conclusion as to whether [an] individual is under a disability." (emphasis added)); see also 20 C.F.R. §§ 404.1529(c), 416.929(c) (directing ALJs to consider a claimant's medical history, medical signs and laboratory findings, daily activities, testimony about nature and location of pain, medication and other treatment used to alleviate pain, along with medical opinions, in assessing intensity of a claimant's symptoms). Here, in compliance with Arakas, Hines, Craig, and the applicable regulations, the ALJ considered the objective medical evidence as one part of her evaluation of the intensity,

15

persistence, and limiting effects of Plaintiff's alleged pain, as the ALJ also considered, as discussed in more detail below, the opinion evidence of record (see Tr. 39-40).

Indeed, the ALJ's evaluation of Plaintiff's subjective symptom reports supports and helps to explain the ALJ's RFC finding that Plaintiff remained able to sit for a total of six hours (in two-hour increments generally) in an eight-hour workday (see Tr. 37). In that regard, the ALJ explicitly acknowledged Plaintiff's testimony that "she is disabled because of constant pain in her back" (Tr. 37 (referencing Tr. 59)), "the pain is in her back and down [her] hips and legs" (id. (referencing Tr. 61)), "[h]er typical pain is 7-8/10 daily" (id. (referencing Tr. 61)), "[s]he has numbness on the left side" (id. (referencing Tr. 61)), and "[s]he has weakness in her left leg and is up and down with standing/sitting" (id. (emphasis added) (referencing Tr. 59, 61)).[9] The ALJ thereafter found that "[Plaintiff]'s medically determinable impairments could reasonably be expected to cause some of the alleged symptoms" (Tr. 38 (emphasis added)), and that "[her] statements concerning the intensity, persistence and limiting effects of [her] symptoms [we]re not entirely consistent with the

---

[9] Plaintiff did not testify at the hearing that her impairments caused her to alternate standing and sitting (see Tr. 55-65), but she did indicate in a Function Report that she could not "sit, stand or walk for more than a few minutes" and "ha[d] to rotate position" due to pain.  (Tr. 339 (emphasis added); see also Tr. 344 (reflecting Plaintiff's statement that she could not "sit for too long" (emphasis added)).)

16

medical evidence and other evidence in the record" (id. (emphasis added)).

Plaintiff's attempt to fault the ALJ for not further addressing Plaintiff's subjective statements about limitations on sitting (see Docket Entry 11 at 7) falls short. Although Plaintiff points to a few instances throughout the over 900-page record where Plaintiff informed providers that sitting (or prolonged sitting) aggravated her back and leg pain (see id. at 5-6 (citing Tr. 440, 444, 451-52, 468-69, 548, 594, 606, 740)), the record does not reflect that Plaintiff ever advised her providers of a specific limit on her ability to sit, or that she could not sit for the two-hour intervals required to perform light work. Even more significantly, neither Plaintiff nor her counsel (apparently) viewed her alleged limitation in sitting significant enough to raise at the hearing before the ALJ (see Tr. 55-65). Notably, in his opening statement, Plaintiff's hearing-level counsel argued that Plaintiff's impairments caused limitations on lifting as well as excessive off-task time and absence, and failed to mention any limits on sitting. (See Tr. 53-54; see also Tr. 72 (reflecting counsel's cross-examination of VE regarding impact of lifting limitations and declining to make closing argument).) Indeed, her counsel maintained that Plaintiff remained capable of sedentary work (see id.), which entails sitting for up to six hours in an eight-hour work day, see Social Security Ruling 83-10, Titles II

17

and XVI: Determining Capability to Do Other Work - the Medical-Vocational Rules of Appendix 2, 1983 WL 31251, at *5 (1983) ("SSR 83-10") ("[A]t the sedentary level of exertion, periods of standing or walking should generally total no more than about 2 hours of an 8-hour workday, and sitting should generally total approximately 6 hours of an 8-hour workday."). Consistent with her counsel's opening remarks, Plaintiff testified that her impairments limited her to standing and walking for seven minutes at a time (Tr. 63-64) (which testimony the ALJ expressly acknowledged (see Tr. 37)), but entirely failed to testify to any limitations on sitting caused by her impairments (see Tr. 55-65). Plaintiff's failure to raise her alleged limitation in sitting at the hearing before the ALJ significantly undermines her claim in this Court that the ALJ failed to sufficiently evaluate her limitations in sitting in the RFC discussion.

Beyond the ALJ's analysis of Plaintiff's subjective symptoms reports, the ALJ's evaluation of the opinion evidence provides further support for the sitting allowance in the RFC. In particular, the ALJ found "partially persuasive" the opinions of the state agency medical consultants (Tr. 40), disagreeing with their findings regarding Plaintiff's migraine headaches and the lack of postural and environmental limitations in the consultants' RFC determinations (see id.), but leaving intact their opinions that Plaintiff remained capable of up to six hours of sitting (see

18

id. (referencing Tr. 86, 96, 106, 114, 123, 131)). Significantly, the record lacks <u>any</u> opinions from Plaintiff's treating medical providers that Plaintiff could not sit for the two-hour intervals required of light work.

Moreover, by pointing to record evidence Plaintiff believes supports greater limitations on her ability to sit, she misinterprets this Court's standard of review. The Court must determine whether substantial evidence, i.e., "more than a mere scintilla of evidence but . . . somewhat less than a preponderance," <u>Mastro</u>, 270 F.3d at 176 (brackets and internal quotation marks omitted), supported the ALJ's finding regarding Plaintiff's ability to sit, and not whether other record evidence weighed against that finding, <u>see</u> <u>Lanier v. Colvin</u>, No. CV414-004, 2015 WL 3622619, at *1 (S.D. Ga. June 9, 2015) (unpublished) ("The fact that [the p]laintiff disagrees with the ALJ's decision, or that there is other evidence in the record that weighs against the ALJ's decision, does not mean that the decision is unsupported by substantial evidence."). Here, notwithstanding some record evidence that might have supported greater sitting limitations, the ALJ's discussion of the medical evidence, evaluation of Plaintiff's subjective symptom reporting, and assessment of the opinion evidence amounts to substantial evidence supporting the RFC's allowance of up to six hours total of sitting (in no more than two-hour intervals generally) (<u>see</u> Tr. 37).

19

Plaintiff's reliance on <u>Dowling</u> fares no better.  In that regard, Plaintiff notes that "[t]he Fourth Circuit recently . . . determin[ed] that the ALJ should have specifically addressed the claimant's testimony regarding how long [s]he was capable of sitting and, further, that ALJs have to perform a function-by-function analysis of contested and relevant functions." (Docket Entry 11 at 8 (citing <u>Dowling</u>, 986 F.3d at 388-89).)  In Plaintiff's view, "[she] has presented evidence that she could not perform the full postural demands of sitting required of the ALJ's RFC, and the ALJ should have adequately evaluated and explained her findings regarding th[at] contested function."  (<u>Id.</u>)

In <u>Dowling</u>, the claimant's treating physician had opined that the claimant's irritable bowel disease limited her "to sit for only <u>15 to 30 minutes at one time</u>, and [<u>less than</u>] <u>two hours total</u> in an 8-hour working day."  <u>Dowling</u>, 986 F.3d at 384 (emphasis added) (internal quotation marks omitted).  The Fourth Circuit found that the ALJ reversibly erred by discounting that opinion, <u>id.</u> at 386, because "it [wa]s far from apparent that the ALJ considered – or was even aware of – each of the [regulatory] factors [governing the evaluation of opinion evidence]," <u>id.</u> at 385 (citing 20 C.F.R. 404.1527(c)).  That opinion, together with Plaintiff's statements "<u>throughout her administrative and judicial proceedings</u> that her [irritable bowel disease] and anal fissure cause[d] her to experience discomfort when she s[at] for a prolonged period of

20

time" led the Fourth Circuit to find that the ALJ failed to "properly assess the extent to which [the claimant]'s sitting problems impacted her ability to work" in the RFC analysis. Id. at 388 (emphasis added).[10]

Here, unlike in Dowling, Plaintiff fails to point the Court to any opinion or medical evidence supporting her inability to sit for the two-hour intervals required in an eight-hour workday. (See Docket Entry 11 at 1-9.) Moreover, also in contrast to Dowling, Plaintiff failed to raise any alleged limitation in sitting at her hearing before the ALJ, instead relying in this Court on a few subjective statements to providers over the course of a 900-plus-page record. Put simply, Dowling does not aid Plaintiff's cause.

In light of the foregoing analysis, Plaintiff has not shown that the ALJ failed to properly evaluate Plaintiff's ability to sit, and, thus, Plaintiff's sole assignment of error falls short.

---

[10] Significantly, the Fourth Circuit found four other deficiencies in the ALJ's decision, see id. at 385-89, which led the court to find the ALJ's faulty evaluation of the plaintiff's ability to sit an additional ground for remand, see id. at 388-89. Plaintiff does not raise any other deficiencies in the ALJ's decision-making here. (See Docket Entry 11.)

21

## III. CONCLUSION

Plaintiff has not established an error warranting remand.

**IT IS THEREFORE ORDERED** that the Commissioner's decision finding no disability is **AFFIRMED,** and that this action is **DISMISSED** with prejudice.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

March 24, 2026

22